**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| ELI LILLY AND COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. |
| | ) | 1: 06-cv-1721-SEB-VSS |
| SUN PHARMACEUTICAL INDUSTRIES LTD. | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT SUN PHARMACEUTICAL INDUSTRIES, LTD'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO**
**DISMISS FOR LACK OF PERSONAL JURISDICTION (FED. R. CIV. P. 12(b)(2))**

**I.     SUMMARY**

The sole basis Lilly alleges for this Court's jurisdiction over defendant Sun Pharmaceutical Industries, Ltd. ("Sun") is Fed. R. Civ. P. 4(k)(2), which only provides for jurisdiction over Sun if Sun is "*not* subject to the jurisdiction of the courts of general jurisdiction of any state". (*Emphasis added*). To fit within the Rule, Lilly alleges that "Sun is not subject to the jurisdiction of the courts of general jurisdiction of any state". (Complaint, ¶3 (Kim Declaration, Exhibit A)). Lilly thereby admits that Sun is not subject to personal jurisdiction in Indiana or, apart from Rule 4(k)(2), in this Court.

Contrary to Lilly's allegation, Sun is subject to jurisdiction in this action in a state – Michigan:

- Sun has consented to personal jurisdiction in the Eastern District of Michigan.

- In the ANDA which is the subject of this lawsuit Sun identifies Caraco Pharmaceutical Laboratories ("Caraco") as the future distributor of the product which the ANDA seeks approval to market. Caraco, a partly-owned subsidiary of Sun, is a Michigan corporation with its principal place of business in Michigan.

1

- Sun sells and delivers other drug products to Caraco in Michigan, and nowhere else in the United States. Caraco markets, sells and distributes Sun's drug products in the United States.

Because there is jurisdiction over Sun in the Eastern District of Michigan with respect to the allegations against Sun in this action, Rule 4(k)(2) does not apply, this Court lacks personal jurisdiction over Sun and the action should be dismissed.

## II.    FACTS

### A.    LILLY'S INFRINGEMENT CLAIMS AGAINST SUN

Sun filed Abbreviated New Drug Application ("ANDA") No. 78-433 with the Food and Drug Administration ("FDA") seeking approval to market a generic version of Gemzar®, Lilly's gemcitabine hydrochloride drug product. Lilly alleges two claims against Sun: (1) that Sun's filing of ANDA No. 78-433 constitutes infringement of Lilly's U.S. Patent No. 5,464,826 (" '826 patent") under 35 U.S.C. § 271(e)(2)(A) (Complaint, ¶¶ 5- 12); and (2) that Sun's  marketing, offering to sell, and selling of its proposed generic gemcitabine hydrochloride product will infringe the '826 patent under 35 U.S.C. §§ 271(a), (b), and (c).  (Complaint,  ¶¶ 13 - 18).

### B.    SUN'S  CONSENT TO JURISDICTION IN THE EASTERN DISTRICT OF MICHIGAN

By letter dated January 9, 2007, Sun wrote to Lilly's counsel and offered to consent to jurisdiction in the Eastern District of Michigan and to a transfer of this action to that district. (Kim Dec., Exhibit B). By letter dated January 9, 2007, Lilly rejected that offer. (Kim Dec., Exhibit C).

### C.    SUN'S CONTACTS WITH MICHIGAN AND ITS LACK OF CONTACTS WITH INDIANA

Sun is a corporation organized under the laws of India to engage, *inter alia*, in developing, manufacturing, and marketing generic drugs worldwide.  Sun's principal place of

business is located at Acme Plaza, Andheri -- Kurla Road, Andheri (E), Mumbai -- 400 059. Declaration of Ashok Bhuta, ¶3 ("Bhuta Decl.").

Sun prepared its ANDA No. 78-433 ("Sun's ANDA") in India.  Bhuta Decl. at ¶17. Acting through consultant Kendle International of Maryland, Sun filed ANDA No. 78-433 with the FDA, in Maryland, requesting FDA to approve the marketing Sun's proposed generic version of Lilly's Gemzar® product ("Sun's ANDA product").  Bhuta Decl. at ¶17. The FDA has not yet approved Sun's ANDA and without that approval Sun is prohibited by law from manufacturing, using, marketing, selling, or offering to sell its ANDA product in the United States and from exporting its ANDA product to the United States. Bhuta Decl. at ¶16. By letter dated October 17, 2006, Sun (through its attorneys Cohen Pontani Lieberman & Pavane LLP) provided the statutorily required notice to Lilly that Sun had submitted its ANDA to the FDA for approval of commercial manufacture, use or sale and/or importation of the proposed ANDA products before the expiration of the '826 patent.  Bhuta Decl. at ¶15.  Sun has not performed any other acts relating to the ANDA in Indiana or elsewhere in the United States.   Bhuta Decl. at ¶¶ 15 to 17.

Sun's ANDA identifies Caraco, Sun's Michigan-incorporated and Michigan-based distributor subsidiary, as the sole and exclusive U.S. distributor of its proposed ANDA product. The proposed package insert ("labeling") for Sun's ANDA product also identifies Caraco as the U.S. distributor for the product.  Under Sun's ANDA, it is Caraco  -- not Sun -- that will sell, market, and distribute the ANDA product in the United States.  Sun will only sell the ANDA product to Caraco, in Michigan.  Bhuta Decl. at ¶¶ 6 to 9.

Sun currently distributes other generic drug products in the United States through Caraco in Michigan. Sun now owns more than half of Caraco. Bhuta Decl. at ¶¶ 6, 7; *see, also*, http://www.sunpharma.com/sunpharma-aboutus/acquisitions.php;

http://www.sunpharma.com/sunpharma-products/sunpharma-formulation/generic-us.php   (Kim Dec., Exhibits D and E).

Sun has another subsidiary incorporated in Michigan: Sun Pharmaceutical Industries, Inc., which is wholly-owned by Sun. *See* Bhuta Decl. at ¶11.

Sun does not have a general presence in Indiana, and is not a resident of Indiana.  Sun does not maintain any offices in Indiana, does not lease any property in the state, and has no physical facilities in Indiana.  Sun does not maintain any bank accounts or telephone numbers in Indiana, and none of its employees lives or works in Indiana.  Sun is not registered to do business in Indiana, and does not have a registered agent in Indiana for service of process.  Moreover, Sun does not market any of its products in Indiana, or sell any products directly to Indiana residents. *See* Bhuta Decl. at ¶¶ 4, 5.

When Sun notified Lilly that it had filed ANDA 78-433, Sun designated a New York law firm (Cohen Pontani Lieberman & Pavane LLP) to accept service of process for the present litigation, and Lilly served its Complaint on Cohen Pontani Lieberman & Pavane LLP in New York. *See* Bhuta Decl. at ¶15.

### D.    ALLEGATIONS IN LILLY'S COMPLAINT PERTINENT TO PERSONAL JURISDICTION

Neither of the two acts of patent infringement alleged in Lilly's Complaint occurred, or will occur, in Indiana. (Complaint at ¶¶ 7, 9, 16-17, Exhibit A). Sun prepared its ANDA in India. *See* Bhuta Decl. at ¶17. The first alleged act of infringement, filing of the ANDA (Complaint at ¶ 9), occurred in Maryland where FDA is located.

The second act of infringement alleged against Sun will occur in Michigan upon Caraco's acquisition from Sun and anticipated distribution of the allegedly infringing ANDA product. After FDA approves Sun's ANDA, Sun will sell and ship the product to Caraco in Michigan, and

Caraco, not Sun, will sell and otherwise distribute the ANDA product in the United States.  *See* Bhuta Decl. at ¶¶ 6 to 9.

## III.   THIS COURT LACKS PERSONAL JURISDICTION OVER SUN

### A.   THE LAW

In ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) based on lack of personal jurisdiction, the plaintiff bears the burden of establishing personal jurisdiction by a preponderance of the evidence.  *Central States, S.E. and S.W. Areas Pension v. Reimer Exp. World*, 230 F.3d 934, 939 (7th Cir. 2000); *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). In making its determination regarding personal jurisdiction, a court may consider matters outside the pleadings, such as affidavits and other materials submitted by the parties.  *See* Fed. R. Civ. P. 12(b). The Court must resolve any factual disputes in the plaintiff's favor, but is required to accept the allegations in the complaint as true only to the extent that they are not controverted by other evidence in the record. The court must also accept as true any uncontested jurisdictional facts presented by the defendant.  *Connolly v. Samuelson*, 613 F. Supp. 109, 111 (N.D. Ill. 1985).

Four conditions must be met for Rule 4(k)(2) to apply:

(1)     no state court could exercise jurisdiction over the defendant;

(2)     the exercise of jurisdiction must be consistent with the Constitution;

(3)     the exercise of jurisdiction must be consistent with the laws of the United States; and

(4)     the plaintiff's claims must be based on federal law.

*Central States*, 230 F.3d at 940.

By naming a state in which the defendant consents to be sued, the defendant precludes a plaintiff's reliance on Rule 4(k)(2) to establish personal jurisdiction over the defendant in a district court in a different state:

"A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed.  Naming a more appropriate state would amount to a consent to personal jurisdiction there (personal jurisdiction, unlike federal subject-matter jurisdiction, is waivable)."

*ISI Int'l v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001).  *See also Miller Pipeline Corp. v. British Gas*, 901 F.Supp. 1416, 1422, 1423 (S.D. Ind. 1995) (Sara Evans Barker, C.J.) (Where defendant admitted it had sufficient contacts with New Jersey, Rule 4(k)(2) did not provide a basis for jurisdiction in the Southern District of Indiana.); *Zeus Proj. Ltd. v. Perez, et al.*, 187 F.R.D. 23, 31, n.15 (D.P.R. 1999) ("Robertson admits that he has sufficient contacts with Florida to make him subject to that state's long-arm statute. . . . Therefore, Rule 4(k)(2) is not applicable.").

The use of Rule 4(k)(2) is also precluded when a plaintiff fails to establish that the exercise of jurisdiction is consistent with the Constitution or federal laws.  Due process permits exercise of personal jurisdiction over a nonresident defendant when it has had "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). What is meant by "minimum contacts" depends on whether general or specific jurisdiction is asserted. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997).

Specific jurisdiction exists when the cause of action "arise[s] out of or relate[s] to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984); *Purdue Res. Found. v. Sanofi-Synthelabo.*, 338 F.3d 773, 787 (7th Cir. 2003). These contacts must demonstrate that a defendant purposely availed itself of the privilege of conducting business in the United States such that it should reasonably anticipate being hailed into court here. *World-Wide VW v. Woodson*, 444 U.S. 286 (1980); *Central States*, 230 F.3d at 943.

General jurisdiction is permitted only when a defendant has "continuous and systematic" contacts with the forum. *Helicopteros*, 466 U.S. at 416.  The Seventh Circuit has stated that contacts, to be considered "continuous and systematic",

> "must be so extensive to be tantamount to [the defendant's] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an [Illinois] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world."

*Purdue*, 338 F.3d at 787 (*emphasis in original*).

The threshold for exercising general jurisdiction has been described by Courts as requiring "that the defendant's contacts be of the sort that approximate physical presence", *Purdue*, 338 F.3d at 787 n. 16 (7th Cir.), *citing Bancroft & Masters v. Augusta Nat'l*, 223 F.3d 1082, 1086 (9th Cir. 2000); as requiring something more than extensive contacts, *Amoco Egypt Oil Co. v. Leonis Navig. Co.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993); "considerably more stringent than that required for specific jurisdiction", *Purdue*, 338 F.3d at 787; imposing a "rigorous burden" on the plaintiff, *Osteotech, Inc. v. GenSci Regeneration Sci., Inc.*, 6 F.Supp.2d 349, 353 (D.N.J. 1998); and as "extremely rare", *Merck & Co., Inc. v. Barr Lab., Inc.*, 179 F.Supp.2d 368, 375 (D.Del. 2002).

**B.**    **THE COURT LACKS PERSONAL JURISDICTION OVER SUN UNDER FED.R.CIV.P. 4(k)(2)**

**1.    Sun's Consent to Suit in Michigan in this Action Precludes Application of Rule 4(k)(2)**

Sun has identified Michigan as a state in which the present action could proceed, and consented to personal jurisdiction in Michigan for this action.  Sun's  identification of Michigan as a state in which this suit could proceed is sufficient to preclude jurisdiction in this Court over Sun under Rule 4(k)(2).  *See ISI Int'l*, 256 F.3d 548, 552 (7th Cir. 2001).  *See also Miller*, 901

F.Supp. at 1422, 1423 (S.D. Ind.); *Zeus*, 187 F.R.D. at 31, n.15. For this reason alone, Sun's

motion to dismiss should be granted.

> **2.** **Rule 4(k)(2) Does Not Apply Because The Minimum Contacts Required to Make the Exercise of Jurisdiction Over Sun "Consistent With the Constitution and Laws of the United States" Establish That There is Jurisdiction Over Sun in this Action in the Eastern District of Michigan**

The facts which provide the minimum contacts with the United States which are

necessary for jurisdiction over Sun under Rule 4(k)(2), actually demonstrate that Sun has had

"minimum contacts" with a particular state, Michigan, so that Rule 4(k)(2) does not apply. *See*,

*e.g.*, *Haemoscope Corp. v. Pentapharm*, 2002 U.S. Dist. Lexis 23387 at *29 (N.D. Ill. 2002):

> "With respect to Pentapharm GmbH, Rule 4(k)(2) is irrelevant. As discussed earlier, the only contact between Pentapharm GmbH and the United States that is relevant to the minimum contacts analysis is the shipment of the ROTEG device to Massachusetts. If that single contact is sufficient to satisfy the minimum contacts requirement, then Pentapharm GmbH will be subject to personal jurisdiction in another state (Massachusetts), and Rule 4(k)(2) would not assist Haemoscope. If that single contact does not satisfy the minimum contacts requirement, then it would violate the Fifth Amendment to subject Pentapharm GmbH to personal jurisdiction.".

*See also Saudi v. Northrop Grumman Corp.*, 221 F.R.D. 452, 457-458 (E.D. Va. 2004), holding

that Rule 4(k)(2) did not apply where,

> "Not only has Plaintiff failed to show Keppel is not subject to the general jurisdiction of any state, he has provided some evidence to the contrary. Keppel's prior and ongoing contacts in New Jersey and Texas suggest that Keppel *might* be subject to the general jurisdiction of the courts of those states." (*emphasis in original*).

*See, In re Automotive Refinish Paint Antitrust Litig.*, 2002 U.S. Dist. Lexis 15099 at *30, n.12

(E.D. Pa. 2002) ("[A]pplication of Rule 4(k)(2) against BASF AG or BASF Coatings is

undermined by several of the allegations and arguments raised by Plaintiffs, including the

alleged sales of BASF AG to BASF Corporation and BASF Coatings's operation of offices in the

United States."); *Doe v. Unocal Corp.*, 27 F.Supp.2d 1174, 1181-82 (C.D.Ca. 1998) ("Total's

remaining potential contacts with the United States are based on the activities of its subsidiaries. If Total's subsidiaries' contacts were imputed to Total, however, several states would have jurisdiction over Total, and Rule 4(k)(2) would not apply.")

In addition, the evidence of Sun's minimum contacts with the United States as a whole, to satisfy the due process requirements of the Fifth Amendment and Rule 4(k)(2), only confirm that those contacts were with Michigan and that there is personal jurisdiction over Sun for purposes of this lawsuit in the Eastern District of Michigan. Sun's filing of its ANDA in Maryland is insufficient, in itself, to confer jurisdiction over Sun in Maryland. *Zeneca, Ltd. v. Mylan Pharms, Inc.*, 173 F.3d 829 (Fed. Cir. 1999). Sun's only other contacts in the United States related to the ANDA and its ANDA product were with Michigan. Sun has identified Caraco to the FDA as the proposed distributor of Sun's generic gemcitabine hydrochloride product and will sell the product to Caraco, in Michigan, for Caraco to market and sell from Michigan, throughout the United States.

Under M.C.L.A. §600.715, limited personal jurisdiction exists upon:

(1)     The transaction of any business within the state.

(2)     The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

(3)     The ownership, use, or possession of any real or tangible personal property situated within the state.

(4)     Contracting to insure any person, property, or risk located within this state at the time of contracting.

(5)     Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.

Under M.C.L.A. §700.711, general personal jurisdiction exists over any corporation that is incorporated in Michigan, consents to jurisdiction to the extent authorized by the consent and

subject to the limitations provided in §600.745; or engages in continuous and systematic business in Michigan.

*See Hoskins Alloys v. Urevich*, 2006 U.S. Dist. Lexis 78043 at *8-9 (E.D. Mich. 2006):

> "The Sixth Circuit noted personal jurisdiction over the defendant was proper if it transacted business in Michigan, and if the suit arose from the transaction. The Sixth Circuit noted that even the slightest act of business was sufficient to constitute the transaction of business . . .. To determine if the suit arose from the defendant's transaction of business in Michigan, the Sixth Circuit applied a 'made possible' test. In other words, if the cause of action was made possible by the earlier transaction of business, it arose out of the transaction, and jurisdiction was proper."), *citing*, *Lanier v. Am. Bd. Of Endodontics*, 843 F.2d 901, 907, 909 (6th Cir. 1988).

*See, also, Widger Chem. Corp. v. Surface Treatments, Inc.*, 601 F.Supp. 845, 848 (E.D. Mich. 1985) ("Defendant entered into a contract with a resident Michigan corporation, which alone, may satisfy the requirement of acting or causing consequences in the forum."). By establishing specific jurisdiction to satisfy the Constitutional requirements of Rule 4(k)(2), Lilly will necessarily also establish jurisdiction in the state of Michigan sufficient to preclude the use of Rule 4(k)(2). *See Haemoscope*, 2002 U.S. Dist. Lexis 23387.

   To the extent that Sun had any "continuous and systematic" contacts in the United States, they were with Michigan. Sun has been selling and shipping its generic drug products only into Michigan, to its Michigan-incorporated and Michigan-based subsidiary Caraco, and it will continue to do so with its products including its generic gemcitabine hydrochloride product. Caraco, in Michigan, has been then marketing, selling, and distributing those Sun generic drug products throughout the United States, and it will continue to do so with Sun's products, including Sun's generic gemcitabine hydrochloride product. Exhibits D and E; Bhuta Decl. at ¶¶ 6 to 9. Sun's investment through Caraco in Michigan and the subsequent scaling up of business at Caraco, with substantial revenues from the U.S. generic pharmaceutical market of $0.8 million in 1997 and over $28 million in March 2006, "inspired" Sun's "long term plans for the US".

Exhibit E.   Sun also wholly owns its Michigan-incorporated subsidiary Sun Pharmaceutical Industries, Inc.  *See* Bhuta Decl. at ¶11.

These contacts were all made with the reasonable expectation of achieving a substantial level of business in Michigan year after year, including, for example, Caraco's distribution of Sun's generic gemcitabine hydrochloride product. Bhuta Decl. at ¶10.  These contacts establish Sun's  intent to maintain "continuing relationships and obligations" in Michigan such that its activities were "continuous and systematic", and had a substantial enough connection with Michigan to make the exercise of jurisdiction over Sun reasonable with respect to Lilly's allegations in this case.  *See Neogen v. Neo Gen*, 282 F.3d 883, 891-892 (6th Cir. 2002):

> "NGS reasonably expects to conduct a given level of business in Michigan year after year. Thus Neogen has presented a prima facie case that NGS has shown its intent to maintain 'continuing relationships and obligations' in Michigan, . . . , such that its activities there are 'continuous and systematic.' The acts of defendant or consequences caused by the defendant had "a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable -- because NGS's 14 yearly sales in Michigan constitute a 'continuous and systematic' part of its business."

*See, also Lanier*, 843 F.2d at 911 ("the real object of the Board's contacts with Michigan is to have ongoing, far-reaching consequences in the Michigan dental services market. These consequences are continuous and substantial, affording jurisdiction").  To establish the contacts with the United States which are necessary to make jurisdiction over Sun in this action consistent with both the Constitution and the laws of the United States, Lilly must rely on Sun's activities in and related to Michigan, which will necessarily establish jurisdiction in the state of Michigan in this action sufficient to preclude the use of Rule 4(k)(2).  *See Haemoscope*, 2002 U.S. Dist. Lexis 23387; *Saudi*, 221 F.R.D. at 457-458; *In re Automotive Refinish Paint Antitrust Litig.*, 2002 U.S. Dist. Lexis 15099 at *30, n.12 (E.D. Pa. 2002); *Doe v. Unocal Corp.*, 27 F.Supp.2d at 1181-82.

## IV.     CONCLUSION

The Court lacks personal jurisdiction over Sun and Lilly's Complaint should be dismissed.

Respectfully submitted,


Dated: January 25, 2007                         By:     \s\ William A. Alper_____
                                                        Martin B. Pavane, Esq.
                                                        William A. Alper, Esq.
                                                        Julia S. Kim, Esq.
                                                        Edward M. Reisner, Esq.
                                                        COHEN PONTANI LIEBERMAN & PAVANE, LLP
                                                        551 Fifth Avenue
                                                        New York, New York  10176
                                                        mpavane@cplplaw.com
                                                        walper@cplplaw.com
                                                        jkim@cplplaw.com
                                                        ereisner@cplplaw.com
                                                        (212) 687-2770

                                                        James W. Riley, Jr., Esq.
                                                        RILEY BENNETT & EGLOFF, LLP
                                                        141 E. Washington Street, Suite 400
                                                        Indianapolis, Indiana  46204
                                                        jriley@rbelaw.com
                                                        Tel:     (317) 636-8000
                                                        Fax:     (317) 636-8027

                                                        Attorneys for Defendant
                                                        Sun Pharmaceutical Industries, Ltd